## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY MONTGOMERY,        )
                                )
           Plaintiff,      )
                                )
vs.                    )   Case No. 3:17 -CV-00666 -MAB
                                )
CENTRALIA CORRECTIONAL     )
CENTER, ET AL.,           )
                                )
          Defendants.

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Larry Montgomery filed this suit under 42 U.S.C. § 1983 against various officials who worked at the Centralia Correctional Facility ("Centralia"). The only remaining Defendant is Robert Mueller, who served as the Warden of Centralia. Defendant Mueller has filed a motion for summary judgment (Doc. 41). For the reasons set forth below, the motion for summary judgment will be granted.

## PROCEDURAL BACKGROUND

Plaintiff filed his complaint on June 27, 2017, pursuant to 42 U.S.C. § 1983, alleging that certain prison employees acted with deliberate indifference to his serious medical needs and served him tainted food in violation of the Eighth Amendment (Doc. 1). After a threshold review pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on two counts against one Defendant, Robert Mueller, the Warden of Centralia (Doc. 6). The following claims survived the threshold review:

> **Count 1**—Mueller was deliberately indifferent to Plaintiff's hernia and related symptoms in violation of the Eighth Amendment when he ignored his grievances;
>
> **Count 2**—Plaintiff was served moldy and expired food which caused him to develop food poisoning in violation of the Eighth Amendment and Mueller ignored Plaintiff's grievances on this point

(Doc. 6, p. 6).

Plaintiff filed a motion for appointment of counsel on October 23, 2017, which the Court granted on December 4, 2017 (Docs. 18, 20). On February 20, 2018, Defendant filed a motion for summary judgment on the issue of exhaustion of administrative remedies, arguing that Plaintiff had not appropriately exhausted his administrative remedies before filing his lawsuit (Docs. 25, 26). Plaintiff opposed this motion in a response filed on March 22, 2018 (Doc. 28). The Court granted in part and denied in part Defendant's motion, finding that Plaintiff failed to exhaust his claim against Defendant for his food poisoning (Count 2) (Doc. 32). Accordingly, Plaintiff's Count 2 was dismissed without prejudice and Plaintiff was allowed to proceed only on Count 1 (*Id.*).

On June 3, 2019, Defendant filed a motion for summary judgment and a memorandum in support (Docs. 41, 42). Plaintiff responded on July 3, 2019 (Doc. 46).

## FACTUAL BACKGROUND

At all times relevant to this case, Plaintiff was incarcerated within the Illinois Department of Corrections ("IDOC") at Centralia (Doc. 1, p. 6). Defendant was the Warden of Centralia from July 2015 to February 1, 2018 (Doc. 42-2, p. 1).

Plaintiff first presented to the health care unit for a sick call on September 25, 2016, with complaints of constipation and abdominal pain (Doc. 49, p. 1). At that time, Plaintiff indicated he had a hernia for over one year and the pain was "intermittent" (*Id.*). Plaintiff also reported that his "hernia is getting bigger and its hurting" (*Id.* at 3). Upon examination, the nurse wrote in her notes "tenderness noted to umbilicus where golf ball sized, soft hernia noted" (*Id.* at 5). He was monitored by nurses in a 23-hour hold until he could be evaluated by a doctor (*Id* at 2). The following morning, a doctor evaluated Plaintiff and noted the hernia was "reducible" (*Id.* at 6). Subsequently, the doctor released him from the prison health care unit, and requested him to follow up in one week (*Id.* at 7). The September 26, 2016, nursing discharge note indicates Plaintiff was instructed to avoid heavy lifting and an abdominal binder was ordered to help contain the hernia. *Id.*

Plaintiff returned to the health care unit on October 3, 2020 for his follow-up appointment and was seen by a doctor. *Id.* Plaintiff complained of abdominal pain at the hernia site as well as constipation. *Id.* The doctor noted the hernia was reducible and the plan of care included using an abdominal binder (*Id.* at 6). Plaintiff again returned to the health care unit with complaints of constant throbbing pain and acute and severe discomfort on October 5, 2016, when he was referred to see a doctor (*Id.* at 9). During this appointment, Plaintiff requested "surgery to get this taken care of" (*Id.* at 11). On examination, Dr. Arnel Garcia admitted Plaintiff to the infirmary for 23-hour observation and noted Plaintiff had a reducible umbilical hernia (*Id.* at 10). Upon admission to the infirmary, Plaintiff was offered continued support, instructed to refrain from straining,

and prescribed Motrin and Robaxin for his pain and discomfort (*Id.* at 11). Plaintiff was seen by nurses also on October 5, 2016, who note that Plaintiff continues to experience pain, but they observed "no signs of distress" (*Id.* at 12).

Dr. Garcia treated Plaintiff in the infirmary and ordered a KUB (kidney, ureter, and bladder) x-ray of Plaintiff's abdomen on October 6, 2016 (*Id.* at 12-14). The same day, Plaintiff was admitted to the inpatient area of the health care unit for chronic care (*Id.* at 17-18). In the admission note, the doctor noted Plaintiff had an umbilical hernia for over three years (*Id.*). From October 6, 2016 through October 26, 2016, Plaintiff remained in the health care unit on chronic live-in status until he was transferred to SSM St. Mary's Hospital (*Id.* at 17-41). While he was living in the infirmary, the record indicates his vitals and condition were monitored every day. *Id.*

On October 13, 2016, while still in the health care unit, Plaintiff complained of pain while straining for bowel movements, but refused a stool softener (*Id.* at 30). Medical records reflect that on October 13, 2016, Plaintiff asked for "a grievance" and, again, requested "surgery to fix this." *Id.* Also on October 13, 2016, Plaintiff filed a grievance regarding his hernia and medical treatment (Doc. 42-3). In his grievance, Plaintiff described how he could "barely breath[e]," and that a hernia was the "same way [his] father passed away" (*Id.* at 2). Plaintiff described experiencing severe pain (*Id.* at 3).

On October 17, 2016, Defendant received Plaintiff's grievance and ordered it to be processed on an emergency basis (Doc. 42-1, p. 15). The official grievance report shows that on October 20, 2016, Defendant reviewed the grievance officer's recommendation

and agreed that Plaintiff's grievance should be denied (Doc. 42-3, p. 1). The response to Plaintiff's grievance stated, "The offender's medical concerns are being addressed by the facility's health care staff; therefore, I recommend grievance be denied." *Id.*

On October 18, 2016, Plaintiff complained of not being able to have a bowel movement and the doctor ordered treatment for constipation (Doc. 49, p. 30). Plaintiff also complained of abdominal pain and rated it as a five out of ten in severity. *Id.*

On October 21, 2016, Plaintiff stated that he wanted "this thing taken out!" (*Id.* at 33). The nurse reminded Plaintiff he needed to increase his water intake and activity, "to which he repeatedly responds, 'I get up to change the channels and to go to the bathroom, I get activity!'" *Id.* The doctor also explained his hernia and reinforced the nurse's instructions; however, Plaintiff continued to insist on a "surgical solution." *Id.*

On October 24, 2016, Plaintiff complained of increased pain and unresolved constipation despite taking Colace (Doc. 49, p. 34). According to the medical record, Plaintiff stated, "I gotta go! My belly be killin' me!" *Id.* The nurse recommended Plaintiff wear a hernia belt and the doctor added Milk of Magnesia, in addition to Colace, to further treat Plaintiff's constipation. *Id.*

Plaintiff reported vomiting and dizziness, as well as continued constipation on October 25, 2016 (*Id.* at 35). The doctor ordered additional measures to assist him, including administering a fleets enema and x-ray. *Id.* The medical staff continued to evaluate and treat him on October 25 and 26 (*Id.* at 35-38). On October 26, 2016, when

Plaintiff complained of increased hernia pain and vomited, the doctor ordered him to be transported to SSM Health St. Mary's Hospital emergency room (*Id.* at 39).

While at St. Mary's Hospital for treatment, Plaintiff received surgery on his incarcerated umbilical hernia on October 29, 2016 (Doc. 49-1, p. 70). In his medical records from St. Mary's Hospital, on October 27, 2016, Plaintiff indicated to the medical staff that he "has had the umbilical hernia for over 10 years and it was reducible. Yesterday, he noticed that the hernia is not going back and there is pain around. He has nausea and vomiting associated. Hence he was brought to the hospital" (*Id.* at 36). The records from October 27, 2016 further note that his "pain is controlled without medications" and is a "6/10 in intensity" (*Id.*).

Plaintiff was discharged from St. Mary's Hospital and transferred back to the Centralia infirmary on November 1, 2016 (*Id.* at 52). Prior to being incarcerated, Plaintiff was a mover off and on for "about 15 years" doing local and commercial moves (Doc. 42-1, p. 3). Plaintiff testified at his deposition that he did not have a hernia before October 2016 (*Id.* at 5).

## <u>LEGAL STANDARDS</u>

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law."

*Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). In deciding a motion for summary judgment, "[a] court may not . . . choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the nonmoving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted).

## ANALYSIS

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "It is well established that persons in criminal custody are entirely dependent on the state for their medical care." *Mitchell v. Kallas*, 895 F.3d 492, 496 (7th Cir. 2018) (citing *Estelle*, 429 U.S. at 103).

The Supreme Court has thus recognized that the Eighth Amendment's proscription against cruel and unusual punishment creates an obligation for prison officials to provide inmates with adequate medical care. *Gabb v. Wexford Health Sources, Inc.*, No. 18-2351, 2019 WL 2498640, at *3 (7th Cir. June 17, 2019) (citing *Estelle*, 429 U.S. at

102–03); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, (1994)). "Prison officials violate this proscription when they act with deliberate indifference to the serious medical needs of an inmate." *Holloway*, 700 F.3d at 1072 (citations omitted). To succeed on a claim for deliberate indifference, a plaintiff must demonstrate that they suffered from an "objectively serious medical condition" and that the defendant acted with a "sufficiently culpable state of mind," namely deliberate indifference. *Goodloe v. Sood*, 947 F.3d 1026, 1030–31 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

## I.    Serious Medical Need

"An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Importantly, "[a] medical condition need not be life-threatening to be serious." *Id.* It can be a condition that "significantly affects an individual's daily activities" or a condition that would result in further significant injury or chronic and substantial pain if left untreated. *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008).

For purposes of his motion for summary judgment, Defendant does not directly address this first prong of the deliberate indifference test, but admits that Plaintiff had a hernia, which ultimately resulted in surgical intervention (Doc. 42, p. 11). Accordingly, the Court will assume that Defendant concedes this issue for the purpose of summary judgment.

## II.     Deliberate Indifference

In order to show that prison officials acted with deliberate indifference, a plaintiff must put forth evidence that the prison officials knew that the prisoner's medical condition posed a serious health risk, but they consciously disregarded that risk. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id.*; *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution.").

### A.     Requisite Knowledge to be Deliberately Indifferent

In Eighth Amendment claims arising from a prisoner's medical care, it is well-established that non-medical officials like Defendant are entitled to defer to the judgment of the medical professionals *E.g., Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.

*Arnett*, 658 F.3d at 755 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). However, non-medical officials can be held liable for deliberate indifference if they ignore the prisoner's complaints or "have a reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (quoting *Spruill*, 372 F.3d at 236); *see also Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) (citing *Bond v. Aguinaldo*, 228 F.Supp.2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.").

Defendant argues that he was not personally involved in Plaintiff's medical care and although he ultimately denied Plaintiff's grievance, it was not ignored (Doc. 42, p. 9, 11). Plaintiff contends that Defendant was notified, through his grievance, of his ongoing, unremedied serious medical need as a result of the prison medical staff's failure to provide a permanent solution to his umbilical hernia and then failed to take action to help Plaintiff (Doc. 46, p. 8).[1]

Here, there is no evidence from which a reasonable jury could conclude that Defendant was deliberately indifferent to Plaintiff's hernia. On October 17, 2016, Defendant received and responded to Plaintiff's October 13, 2016 grievance about his hernia and medical treatment. From the record, it appears this was the first time that Defendant learned of Plaintiff's hernia pain. As a result of Defendant's response to Plaintiff's grievance, it was expedited for emergency review (Doc. 42-1, p. 5). *See also Johnson*, 433 F.3d at 1010, referencing *Greeno*, 414 F.3d at 656 ("Perhaps it would be a

---

[1] In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, he contends that the delay of his hernia surgery ultimately led to his renal failure diagnosis; however, Plaintiff does not include additional information to support this assertion.

different matter if [the non-medical prison official] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns.").[2] While the grievance process progressed, Plaintiff's medical records reflect he was treated continuously throughout October 2016 by medical professionals, ultimately receiving surgery on October 29, 2016 (Doc. 49, pp. 17-41). Plaintiff was housed in the health care unit at the time his grievance was reviewed by the grievance officer and Defendant (Doc. 42-3). On October 20, 2016, Defendant concurred with the grievance officer's recommendation that Plaintiff's grievance be denied because he had been evaluated by a doctor and was receiving continuous, daily medical care for his hernia in the health care unit (Doc. 42-3, p. 1-2).

Plaintiff contends that Defendant was deliberately indifferent when he denied his grievance and was not given an immediate hernia surgery. Plaintiff argues that "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices

---

[2] *See also Hernandez v. Keane,* 341 F.3d 137, 148 (2d Cir.2003); *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993)); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir.2004); and *Bond v. Aguinaldo,* 228 F. Supp. 2d 918, 920 (N.D.Ill.2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals."). The Seventh Circuit has held that non-medical staff can possess the requisite knowledge to be deliberately indifferent, but this is usually in situations where there is a longer delay in medical treatment or the non-medical staff ignores a series of grievances. *See Perez v. Fenoglio,* 792 F.3d 768, 782 (7th Cir. 2015) (plaintiff stated deliberate indifference claim against grievance officials where they did not intervene after receiving several grievances regarding plaintiff's medical care), with *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010) (plaintiff did not present sufficient facts from which a reasonable jury could infer that jail administrator was deliberately indifferent where he consulted with medical staff and responded to plaintiff's complaints).

to state a claim of deliberate indifference" (Doc. 46, p. 7, citing *Smith v. Knox County Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012)). Delaying medical treatment may constitute deliberate indifference, depending on the seriousness of the condition and the ease of providing treatment. *See Smith*, 666 F.3d at 1040 (where a plaintiff successfully argued that prison officials were deliberately indifferent to a serious medical need after he was attacked by another inmate, suffered injuries to his head, and exhibited alarming symptoms, including throwing up, dizziness, loss of eye color, and had visible dried blood on him, but was not seen by a medical professional for five days); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). That is not the case here, though, as Plaintiff was given continuous care with medical professionals attempting to alleviate Plaintiff's pain through various means. Examples include the fact that when Plaintiff complained of pain during bowel movements, he was prescribed a stool softener (Doc. 49, p. 30). When Plaintiff continued to have pain, he was prescribed additional medicine and instructed to wear a hernia belt. (*Id.* at 34).

Defendant had no "reason to doubt" that the health care unit based their recommendation on medical judgment and were adequately addressing Plaintiff's concerns. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Arnett*, 658 F.3d at 756 ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.") (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). There is nothing in the record to demonstrate that surgery was necessary or that the medical care Plaintiff received, which

was a month of daily monitoring as Plaintiff was housed in the infirmary before surgery, "departed from professional judgment." *Higgins*, 178 F.3d at 511. *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Although Plaintiff preferred to have hernia surgery immediately when he first reported to the health care unit, a mere disagreement in medical treatment does not amount to deliberate indifference. *Edwards v. Synder*, 478 F.3d 827, 831 (7th Cir. 2007); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).   Defendant reviewed and responded to Plaintiff's grievance, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions. Accordingly, Defendant is entitled to summary judgment.

B.    Qualified Immunity

Defendant seeks judgment in his favor on the defense of qualified immunity because Defendant argues that he did not violate Plaintiff's constitutional rights and could not have known that he might be liable even though he did not actually participate in any aspect of plaintiff's medical care (Doc. 42, p. 13). Plaintiff counters that his version of the facts would support a finding that the Plaintiff's constitutional right under the Eighth Amendment were clearly established at the time of the challenged conduct and Defendant's deliberate indifference to his hernia violated his constitutional right (Doc. 46, pp. 10-11).

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S.

223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct.   *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly established' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

For the reasons stated above, the Court finds that Defendant is entitled to qualified

immunity because, even when the facts are taken in the light most favorable to Plaintiff,

he engaged in no conduct that violated Plaintiff's constitutionally-protected rights.

<u>CONCLUSION</u>

For the above-stated reasons, Defendant's motion for summary judgment (Doc.

41) is **GRANTED** and this action is **DISMISSED with prejudice**. The Clerk of Court is

**DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and close this

case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:   October 2, 2020**

s/   Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**